*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ROBINSON/DUKES, Minors.

UNPUBLISHED
August 24, 2023

No. 362070
Ingham Circuit Court
Family Division
LC Nos. 20-000671-NA;
        21-000228-NA

Before: GADOLA, P.J., and M.J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her two minor children, LMR and JD, under MCL 712A.19b(3)(b)(*ii*) (failure to prevent physical injury). On August 16, 2020, respondent's son LR was horrifically beaten by respondent's then-boyfriend, Quintiene Campbell, while respondent was at work. LR died from his injuries. LMR also suffered extensive injuries but survived. JD was born while the child-protective proceedings were pending and was removed from respondent's care shortly after birth. On appeal, respondent contends that there was no statutory basis for termination because she had not been aware that Campbell was abusing LR and LMR and because she had been participating in services since the start of the case. She also contends that termination was not in the children's best interests because she had been making substantial progress with regard to these services. We affirm.

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3), and this Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established, *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if although there is some evidence to support it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id*.

This Court also reviews for clear error a lower court's decision that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

MCL 712A.19b states, in part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

Respondent contends that there was insufficient evidence that respondent knew about the ongoing abuse by Campbell such that she could have prevented it. But DHHS presented ample evidence to support the court's conclusion that she was aware of Campbell's abuse. Dr. Stephen Guertin testified about a great number of fresh and historical injuries on LMR. And according to Detective Jody McGuire, LMR said that respondent was not aware of the abuse "sometimes," but "sometimes [Campbell] would tell [respondent], and then [respondent] would ask [LMR and LR] why they did what they did." Further, LMR told Detective McGuire that sometimes his mom would be making dinner when the abuse happened and that the children "received whoopings a lot of times." In February 2020, the children's grandmother (respondent's mother) told respondent that the children had complained of Campbell choking and grabbing them. Respondent asked the children twice if it was true that Campbell had hurt them and the children said that it was not true. The grandmother filed a complaint with CPS but the investigation revealed no wrongdoing.

Further, in May 2020 Campbell sent respondent a text stating that he had "whooped [LMR's] ass" and had scraped LMR's face by pulling him away from a bedpost. She responded with a heart emoji. Respondent asserts that she was working at the time and responded with the emoji to indicate she received the message. Respondent said that she did not know whether she checked for injuries to LMR later. She admitted allowing Campbell to spank the children with his open hand on their bare buttocks one time after previous non-corporal punishments were not effective. Respondent stated that Campbell understood this was a "one-time thing."

In counseling, LMR revealed multiple instances of abuse by Campbell; Campbell had thrown LMR down the stairs and thrown him against a wall. According to LMR's counselor, LMR "express[ed] that he told his mother on a few different occasions about what was happening." "[LMR] said that [respondent] would get upset with [Campbell] and that she would kick him out of the house and then in a day or so they would go and pick him up and bring him home."

The court did not clearly err by finding that respondent had known about the ongoing abuse. The counselor's testimony regarding LMR's disclosures to respondent show that respondent was aware of the abuse. In addition, the trial court explicitly found respondent's assertion to the contrary not to be credible. This Court defers to a trial court's assessment of credibility. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

-2-

Respondent contends that she had made progress in services and that the trial court clearly erred by finding that the children were likely to be harmed in the future if placed in her care. The trial court based its decision upon respondent's actions both leading up to the incident on August 16, 2020 and afterwards. First, the trial court found respondent's decision to leave her children in the care of Campbell following the February 2020 CPS investigation to be questionable considering he was the alleged perpetrator of abuse. Second, there was evidence that respondent affirmatively supported Campbell's abuse, such as when she responded to Campbell's texts detailing abuse with a heart emoji. The court found that "the signs were present and Respondent-Mother actively ignored them." Lastly, the court detailed Campbell's horrific abuse that led to LR's death. All of this evidence supported the trial court's finding that the children were likely to be harmed if placed in respondent's care in the future.

It is true that respondent presented evidence of progress she had been making in therapy, but at the time of the termination hearing she had not been to therapy for several months, even though DHHS had offered free services. Under all the circumstances, we do not have a firm and definite conviction, *Mason*, 486 Mich at 152, that the trial court made a mistake by finding that a statutory basis for termination existed.[1]

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted); see also MCL 712A.19b(5).

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Respondent contends that the trial court clearly erred by finding that termination was in the children's best interests because she was making progress in her service plan and was committed to the welfare of her children. But again, respondent displayed profoundly poor decision-making

---

[1] Respondent complains about the suspension of parenting time with LMR but an evidentiary hearing was held regarding this suspension and the record contains ample support regarding why it occurred. Also, respondent's apparent argument that respondent was entitled to further reunification services is unavailing in light of the aggravated circumstances. See MCL 712A.19a(2)(a) and MCL 722.638(2).

by ignoring abuse being perpetrated against her children and had not been to counseling for months at the time of the termination hearing.

LMR was extremely traumatized by the events that took place in respondent's home. LMR's counselor stated that he seemed healthier placed with his biological father and was doing well there. He did not want to see respondent. The counselor said that LMR was comfortable with his current living arrangement and seemed to have broken his prior bond with respondent. Respondent made very little attempt to keep in contact with LMR after visitations were suspended. The trial court did not clearly err by finding that it was in LMR's best interests to terminate respondent's parental rights.

As for JD, he had never lived with respondent because he had been removed from her custody shortly after birth. In light of the egregious circumstances of this case, we do not have a firm and definite conviction that the trial court made a mistake by concluding that it was in JD's best interests to terminate respondent's parental rights. JD was placed with a maternal aunt, and the court made note that if the aunt adopted him, respondent would "still be able to have a relationship with him but under the safe confines of the maternal aunt's care." Under all the circumstances, we find no basis for reversal.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

-4-